Filing # 34244568 E-Filed 11/09/2015 04:19:53 PM

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA
CIVIL DIVISION

NELSON C. STEINER for the use
and benefit of the State of Florida,

    Plaintiff,

v.                                                                   CASE NO.

DRAFTKINGS, INC., a Delaware
corporation, and FANDUEL, INC.,
a Delaware corporation,

    Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, NELSON C. STEINER for the use and benefit of the State of Florida, hereby sues Defendants, DRAFTKINGS, INC. ("DraftKings") and FANDUEL, INC. ("FanDuel), and states:

**JURISDICTION; VENUE; THE PARTIES**

1. This is an action for damages and recovery of monies staked, wagered, used, and received by and through the Defendants via illegal gambling in violation of Chapter 849, Florida Statutes.

2. At all relevant times, Plaintiff, NELSON C. STEINER, was a resident of Pinellas County, Florida, and a concerned citizen of the State of Florida that believes, consistent with the public policy of this State, that illegal gambling is injurious to the citizens of the State, and it deprives the State of tax revenues and lawful employment opportunities and other economic benefits.

3. Plaintiff has never had an account with or placed a bet with either of the Defendants, and he is authorized by Florida Statutes §849.12, *et seq.*, to pursue this claim.

4. At all relevant times, DraftKings was and is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located in Boston, Massachusetts.

5. DraftKings promotes its gambling transactions through its internet site throughout the nation, including the State of Florida, and internationally. DraftKings, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated gambling business activity within the State of Florida. It is subject to personal jurisdiction in the State of Florida because it regularly conducts its gambling business in the State of Florida and committed the unlawful acts alleged herein in the State of Florida.

6. Defendant DraftKings operates a fantasy sports website that promotes and induces individuals to gamble and facilitates their gambling transactions on fantasy sports games. To begin gambling on DraftKings' website, an individual places a deposit and creates a DraftKings account. That person then uses the money on deposit to make bets and wagers in daily fantasy sports games. The bets of others who also wager on the same fantasy sports games are pooled. At the end of each day, the winner of each betting pool is then awarded the losing participants' money from the pool, less a "rake" withheld from the pool by the Defendant; the winnings are deposited into the winning bettor's DraftKings account.

7. FanDuel promotes its gambling transactions through its internet site throughout the nation, including the State of Florida, and internationally. FanDuel, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated gambling business activity within the State of Florida. It is subject to personal jurisdiction in the State of Florida

because it regularly conducts its gambling business in the State of Florida and committed the unlawful acts alleged herein in the State of Florida.

8. FanDuel is a fantasy sports website that promotes and induces individuals to gamble and facilitates gambling transactions on fantasy sports games. To begin gambling on FanDuel, an individual places a deposit and creates a FanDuel account. That person can uses the money on deposit to make bets and wagers in daily fantasy sports games. The bets of others who also wager on the same fantasy sports game are pooled. At the end of each day, the winner of each fantasy contest is then awarded the losing participants' money from the pool, less a "rake" withheld from the pool by the Defendant; the winnings are deposited into the winning bettor's FanDuel account.

9. At all relevant times, both Defendants, FanDuel and DraftKings, ran their respective gambling businesses by and through their employees, agents, and representatives, who were all working within the scope of their employment, agency, and representative capacity with Defendants and working in furtherance of Defendants' interests.

10. This Court has subject matter jurisdiction of this action under Chapter 849, Florida Statutes.

11. Venue in this Court is proper pursuant to applicable law as the Relator resides in Pinellas County and the Defendants regularly conduct their illegal gambling businesses in Pinellas County.

12. All conditions precedent to this action have been performed, satisfied, or waived.

## BACKGROUND OF FANTASY SPORTS

13. Daily fantasy sports gambling has recently grown into an industry projected to receive approximately $31 billion in player bets and wagers by the year 2020.

14. The gambler makes a bet or wager that varies in amount.

15. To begin playing on DraftKings or FanDuel, an individual is required to place a deposit and create an account with one of the Defendants. That deposit can then be used to make bets or wagers on daily fantasy sports games. The amount wagered is deducted from the better's account at the time of the bet. At the end of each day, the winner of each fantasy betting pool is then awarded winnings, less an amount withheld by the Defendants, and such winnings are deposited into the winner's account.

16. The competitions vary by sport and format, but the most popular forum is daily or weekly fantasy football. In a typical competition, gamblers holding an account with either or both of the Defendants place a bet with the Defendant holding the better's account. The bets range from $1 to thousands of dollars; the bets are pooled with those of other gamblers with the hope of each bettor that he/she will field the winning fantasy football "team." The basic format for fantasy sports is best typified by a typical bet on a NFL game.

17. One example of a game that gamblers may play provides the gambler a fantasy budget to spend on players who are competing in games that day or week in the NFL. The fantasy budget is an artificial number, $60,000 for example; NFL players are assigned a value by DraftKings or FanDuel. Gamblers, bound by the $60,000 fictitious salary cap, select a roster of players they believe will perform well in terms of individual statistics. Each gambler selects his/her team by player positions based on the salaries assigned by DraftKings or FanDuel, not to exceed the fantasy salary cap of $60,000.

18. At a time certain before the NFL games begin, no further bets or wagers are allowed and a gambler sets his/her final roster. The NFL players each earn points for the gambler based upon their performance in that day's or week's games. The gambler with the highest total

of points in relation to other gamblers in that game wins and is paid the pool, less the amount withheld by DraftKings or FanDuel.

19. Defendants generate their revenue by collecting and holding the bets placed by the gamblers, and then taking a "rake" of the amounts wagered much like the "rake" taken by the "house" in parimutuel betting or poker rooms.

20. Though the rake varies by game type and amount, it normally hovers around 10%. In a typical competition wherein 1000 players bet $10 each in a winner-takes-all format, the champion will walk away with $9000 of the $10,000 total betting pool, with DraftKings or FanDuel taking its 10% rake, or $1000.

21. To lure customers and to promote gambling transactions, Defendants' saturate television, particularly commercials airing during sporting events, with seductive advertising. In 2014, DraftKings alone had 1,782 separate television ads that were aired and broadcasted into the State of Florida. One advertisement for Defendant DraftKings stated "DraftKings combines one-day fantasy sports with winning life-changing amounts of cash." Another tells the story of DraftKings customer Derek Bradley, a former accountant. "DraftKings one-day fantasy baseball took him from a guy with holes in his underpants," the announcer states, "to a guy with bikini models in them!" The commercial promises that if one signs up for DraftKings, the site will "double [his or her] deposit."

22. DraftKings alone spent approximately $23.6 million on television advertisements in September 2015. These ad campaigns and promises have been very successful in luring residents of Florida to gamble in gambling transactions promoted and facilitated by DraftKings. FanDuel also use its ad campaigns and promotions to lure Florida residents to gamble in gambling transactions promoted and facilitated by FanDuel.

23. DraftKings and FanDuel are operating illegal gambling enterprises in violation of Chapter 849, *Florida Statutes.*

24. The Defendants entice residents of the State of Florida to their websites via advertisements promising fantastic returns and winnings on allegedly legal fantasy sports games.

## FLORIDA GAMBLING LAW

25. Defendants are operating in violation of Chapter 849, *Florida Statutes.*

26. Section 849.08, *Florida Statutes*, defines gambling as ". . . any game at cards, keno, roulette, faro or other game of chance, at any place, by any device whatever, for money or other thing of value . . . ."

27. "Gaming is an agreement between two or more to risk money on a contest of chance of any kind, where one must be loser and the other gainer.' A most apt definition of 'gambling,' adopted by Anderson in his Law Dictionary, is by Judge Thompson, in Brua's Appeal, 55 Pa. 294, text 298, as follows: 'Anything which induces men to risk their money or property without any other hope of return than to get for nothing any given amount from another is gambling, and demoralizing to the community, no matter by what name it may be called. It is the same whether the promise be to pay on the color of a card, or the fleetness of a horse, and the same numerals indicate how much is lost and won in either case, and the losing party has received just as much for the money parted with in the one case as in the other, viz. nothing at all." *Creash v. State*, 131 Fla. 111, 114-15, 179 So. 149, 150-51 (Fla. 1938); *Bellamy v. State*, 347 So. 2d 419, 420 (Fla. 1977).

28. "Chance actuated by the hope of getting something for nothing is the controlling element in gambling. Any agreement or inducement by which one person risks his money or other thing of value with no prospect of return except to get for nothing the money or goods of

another is gambling. If the contest for a 'purse, prize, or premium' or a 'stake, bet or wager' has this element in it, it is gambling, regardless of the name by which it is called, the implements employed to accomplish the act, or the manner in which it is conducted." *Creash v. State*, 131 Fla. 111, 114-15, 179 So. 149, 150-51 (Fla. 1938).

29. Section 849.14, *Florida Statutes*, states that is unlawful to bet on the result or trial of contest or skill, "[w]hoever stakes, bets or wagers any money or other thing of value upon the result of any trial or contest of skill, speed or power or endurance of human or beast, or whoever receives in any manner whatsoever any money or other thing of value staked, bet or wagered, or offered for the purpose of being staked, bet or wagered, by or for any other person upon any such result, or whoever knowingly becomes the custodian or depositary of any money or other thing of value so staked, bet, or wagered upon any such result, or whoever aids, or assists, or abets in any manner in any of such acts all of which are hereby forbidden, shall be guilty of a misdemeanor of the second degree."

30. A 1991 Florida Attorney General Opinion states, Section 849.14, *Florida Statutes*, prohibits the operation of and participation in a fantasy sports league whereby contestants pay an entry fee for the opportunity to select actual professional sports players to make up a fantasy team whose actual performance statistics result in cash payments from the contestants' entry fees to the contestant with the best fantasy team. Florida Op.Atty.Gen. 91-3, Jan. 8, 1991 (1991 WL 528146).

31. Section 849.26, *Florida Statutes*, states "[a]ll promises, agreements, notes, bills, bonds or other contracts, mortgages or other securities, when the whole or part of the consideration if for money or other valuable thing won or lost, laid, staked, betted or wagered in any gambling transaction whatsoever, regardless of its name or nature, whether heretofore

prohibited or not, or for the repayment of money lent or advanced at the time of a gambling transaction for the purpose of being laid, betted, staked or wagered, are void and of no effect..."

32. Section 849.31 expressly contemplates that a suit may be brought by "someone other than the loser of the money," and the Plaintiff as a resident and citizen of the State of Florida has standing to bring this case.

33. It is well established that gambling adversely affects the public welfare. Moreover, to the extent that the State of Florida has chosen to regulate certain forms of gambling, the State has consistently generated revenue for the State from the gambling activities. Accordingly, illegal gambling deprives the State of legitimate tax revenues which would be received if the illegal wagering were done under proper state laws.

34. In addition, gambling, as allowed and regulated by the State of Florida, occurs in fixed base facilities located with the State. Such facilities provide employment opportunities and other economic benefits to the State and its political subdivisions.

35. As a result of the Defendants' illegal gambling activities in the State of Florida, the Plaintiff retained the undersigned counsel to enforce the provisions of Chapter 849, Florida Statutes, and public policy of the State.

## COUNT I – DECLARATORY AND INJUNCTIVE RELIEF

36. Plaintiff realleges and reincorporates all of the allegations set forth in the preceding paragraphs 1 – 35 as if fully set forth herein.

37. Plaintiff seeks a declaratory decree finding that the Defendants are operating in violation of Chapter 849, Florida Statutes.

38. The Defendants have been operating illegal gambling enterprises in violation of Chapter 849, Florida Statutes, thus, all bets and wagers made on their web sites are void in their entirety pursuant to § 849.26, Florida Statutes.

39. The aforementioned case or controversy is justiciable and actual and concerns an issue of great public importance that should be resolved.

40. The issues are ripe for judicial review because there is a genuine need to compel compliance with Florida gambling laws and the public policies of this State.

WHEREFORE, Plaintiff demands judgment against each Defendant as follows:

a. a declaration that Defendants are operating illegal gambling enterprises in violation of Chapter 849, Florida Statutes;

b. an injunction prohibiting the further collecting of bets and wagers from the residents of the State of Florida; and

c. an award of attorneys' fees and costs to Plaintiff and Plaintiff's counsel, and such other relief as this Court deems just and equitable.

## COUNT II – FORFEITURE AND RECOVERY AGAINST DRAFTKINGS

41. Plaintiff realleges and reincorporates all of the allegations set forth in the preceding paragraphs 1 – 35 if fully set forth herein.

42. All money, currency or property of any kind to be disposed of, or offered to be disposed of, by chance or device in any scheme or under any pretext by any person, or of a share or right in any such scheme of chance or device, and all money or other thing of value at stake, or used or displayed in or in connection with any illegal gambling or any illegal gambling device contrary to the laws of the State of Florida shall be forfeited.

43. DraftKings is operating illegal gambling schemes in the State of Florida.

44. All such amounts are recoverable by civil proceedings, filed, or by action for money had and received, to be brought by a prosecuting officer such as the Plaintiff in the name of the State, or by someone other than the losers of the monies on Defendant's web site.

45. Pursuant to § 849.29, *Florida Statute,* Defendant DraftKings is liable for each and every deposit, stake, bet or wager made or used through its web site by any and all citizens of the State of Florida.

WHEREFORE, Plaintiff hereby demands judgment against DraftKings as follows:

a. forfeiture of all amounts illegally bet or wagered by residents of the State of Florida in connection with DraftKings' illegal gambling activities;

b. recovery from DraftKings of all amounts illegally bet or wagered by residents of the State of Florida in connection with DraftKings' illegal gambling activities;

c. all amounts recovered or forfeited shall be paid into and held in the registry of the Court pending a Court approved plan of distribution or approval of payment to the State of Florida; and

d. an assessment of attorneys' fees and costs to Plaintiff's counsel, and such other relief as this Court deems just and equitable.

## COUNT III – FORFEITURE AND RECOVERY AGAINST FANDUEL

46. Plaintiff realleges and reincorporates all of the allegations set forth in the preceding paragraphs 1 – 35 if fully set forth herein.

47. All money, currency or property of any kind to be disposed of, or offered to be disposed of, by chance or device in any scheme or under any pretext by any person, or of a share or right in any such scheme of chance or device, and all money or other thing of value at stake,

or used or displayed in or in connection with any illegal gambling or any illegal gambling device contrary to the laws of the State of Florida shall be forfeited.

48. FanDuel is operating illegal gambling schemes in the State of Florida.

49. All such amounts are recoverable by civil proceedings, filed, or by action for money had and received, to be brought by a prosecuting officer such as the Plaintiff in the name of the State, or by someone other than the losers of the monies wagered on Defendant's web site.

50. Pursuant to § 849.29, *Florida Statute*, Defendant FanDuel is liable for each and every deposit, bet or wager made through its web site by any and all citizens of the State of Florida.

WHEREFORE, Plaintiff hereby demands judgment against FanDuel as follows:

a. forfeiture of all amounts illegally bet and wagered by residents of the State of Florida in connection with FanDuel's illegal gambling activities;

b. recovery from FanDuel of all amounts illegally bet and wagered by residents of the State of Florida in connection with FanDuel's illegal gambling activities;

c. all amounts recovered or forfeited shall be paid into and held in the registry of the Court pending a Court approved plan of distribution or approval of payment to the State of Florida; and

d. an assessment of attorneys' fees and costs to Plaintiff's counsel; and such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

The Plaintiff demands trial by jury on all claims so triable.

                              JOHNSON, POPE, BOKOR,
                              RUPPEL & BURNS, LLP

                          By: /s/ Michael C. Markham
                              MICHAEL C. MARKHAM
                              FBN: 768560; SPN#904699
                              Email 1: mikem@jpfirm.com
                              Email 2: minervag@jpfirm.com
                              GUY M. BURNS
                              FBN 0160901; SPN 000697251
                              Email 1: GuyB@jpfirm.com
                              Email 2: LauraH@jpfirm.com
                              DARRYL R. RICHARDS
                              FBN: 0348929
                              Primary email: darrylr@jpfirm.com
                              Secondary email: gwenb@jpfirm.com
                              911 Chestnut Street
                              Clearwater, FL 33756-5643
                              Ph:    (813) 225-2500
                              Fx:    (813) 223-7118
                              *Counsel for Plaintiff*

3230971